IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIE BROWN, | ) | |
| | ) | |
| Movant/Defendant, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 10-27-GMS |
| | ) | Cr. A. No. 06-50-GMS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

**MEMORANDUM OPINION**

---

Willie Brown. *Pro se* movant.

Shawn A. Weede. Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for respondent.

---

March 19, 2013
Wilmington, Delaware

SLEET, Chief Judge

## I. INTRODUCTION

Movant Willie Brown ("Brown") filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.I. 319) and a motion to supplement (D.I. 330) (hereinafter collectively referred to as "§ 2255 motion"). The government filed its answer in opposition. (D.I. 335) For the reasons discussed, the court will deny Brown's § 2255 motion without holding an evidentiary hearing.

## II. BACKGROUND

In May 2006, Brown was indicted on one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & 846, and four substantive counts of distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)A).

The evidence presented at trial showed that Brown ran a crack and powder cocaine distribution operation in the Capitol Green neighborhood of Dover, Delaware from November 2005 to April 2006. Through its investigation, the Drug Enforcement Administration ("DEA") compiled extensive evidence of Brown's conduct, including the use of an undercover DEA agent, video surveillance, audio recordings of in-person meetings, and recordings of telephone calls monitored through the use of three wiretap intercept orders.

Brown chose to represent himself at trial, and he was convicted on the four counts alleging conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)A). However, the jury was unable to reach a verdict on the count alleging conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & 846, and the government later dismissed this count without prejudice. The court sentenced Brown to four concurrent terms of

1

150 months of incarceration, 60 months of supervised release, and a $400 special assessment. The government filed a motion to correct a clerical error, and the court entered an amended judgment on January 15, 2009. Brown did not file a direct appeal.

## II. EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. The record conclusively demonstrates that Brown is not entitled to relief under § 2255. Therefore, the court concludes that an evidentiary hearing is not warranted.

## III. DISCUSSION

In a timely filed § 2255 motion, Brown asserts two general grounds of relief. First, Brown contends that his Sixth Amendment right to counsel was violated because he did not knowingly and voluntarily waive that right. Second, Brown contends that the third and final attorney who represented him provided ineffective assistance prior to Brown's decision to represent himself.[1] The government has filed a response in opposition, contending that both grounds should be denied.

### A. Waiver of the Right to Counsel

Brown contends that his waiver of counsel was involuntary and unknowing, because the court failed to explain the duty and function of stand-by counsel, and also failed to explain that

---

[1] The government interprets Brown's second claim as including an allegation that standby counsel provided ineffective assistance during the trial. In his response, Brown explains that he is not alleging ineffective assistance of standby counsel during the trial. (D.I. 338 at 28) Therefore, the court will not address the standby counsel issue.

2

he could withdraw his request to represent himself at any time.[2]

As an initial matter, the court concurs with the government's assertion that this claim should be denied as procedurally barred due to Brown's failure to raise this issue on direct appeal. However, considering the possibility that Brown's failure to file any direct appeal may have stemmed from an improper waiver of the right to counsel, the court will exercise prudence and address the merits of claim one.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "The plain wording of this [Sixth Amendment] guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful defense." *United States v. Wade*, 388 U.S. 218, 225 (1967). The right to counsel attaches at all critical stages in the criminal justice process, including trial and sentencing. *See Maine v. Moulton*, 474 U.S. 159, 170 (1985); *Gardner v. Florida*, 430 U.S. 349, 358 (1997). The right to counsel is fundamental and does not depend on a request by the defendant. *Gideon v. Wainwright*, 372 U.S. 335 (1963).

Nevertheless, the right to counsel is not absolute. *See Gideon*, 372 U.S. 335 (right to counsel may be affirmatively and voluntarily waived); *Johnson v. Zerbst*, 304 U.S. 458 (1938)(a defendant's waiver of the right to counsel must be affirmative and on the record). In *Faretta v.*

---

[2] In his discussion regarding his alleged involuntary waiver of counsel, Brown asserts that the court failed to penetrate the conflict of interest between he and his counsel. Given the placement of this statement in Brown's memorandum, the government reasonably interprets this assertion as an additional ground for challenging the voluntariness of Brown's waiver of counsel. (D.I. 335 at 21) However, in his response to the government's answer, Brown asserts that the government improperly re-characterized his conflict of interest claim as being part of his waiver of counsel claim. He explains that the conflict of interest issue is part of his ineffective assistance of counsel claim. (D.I. 338 at 26-27) Given Brown's clarification regarding his argument, the court will review the conflict of interest issue as part of claim two rather than as part of claim one.

3

*California*, 422 U.S. 806 (1975), the Supreme Court held that a criminal defendant has a Sixth Amendment right to represent himself and, therefore, may affirmatively waive his right to counsel. A criminal defendant's waiver of counsel is only valid if the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835.

Pursuant to *Faretta*, a trial court must ensure that a defendant's waiver of counsel is knowing, voluntary, and intelligent before permitting him to proceed *pro se*. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). Notably, a court is not required to follow any particular script in order to satisfy the *Faretta* inquiry requirement. *Id*. However, in recognition of *Faretta*'s general requirement that a waiver of the right to counsel "ought not [be] accept[ed] . . . absent a penetrating and comprehensive examination of all the circumstances,"[3] the Third Circuit requires district courts to make the following assurances before allowing a defendant to represent himself:

1. The defendant must assert his desire to proceed *pro se* clearly and unequivocally.

2. The court must inquire thoroughly to satisfy itself that the defendant understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved.

3. The court must assure itself that the defendant is competent to stand trial.

*United States v. Peppers*, 302 F.3d 120, 132 (3d Cir. 2002)(citations and quotations omitted). The Third Circuit has established a "useful framework" of fourteen model questions to be asked when a defendant asserts a request to proceed *pro se*. *Id*. at 135; *United States v. Jones*, 452 F.3d 223, 234 (3d Cir. 2006). These questions are, in large part, derived from the Federal Judicial Center Benchbook. *Peppers,* 302 F.3d at 136.

---

[3]*United States v. Stubbs*, 281 F.3d 108, 118-19 (3d Cir. 2002).

4

### 1. Failure to explain function of stand-by counsel

Here, Brown was represented by three different court-appointed attorneys over the course of more than two years. At Brown's request, the court dismissed Brown's first attorney on May 23, 2007. The court appointed replacement counsel on May 29, 2007, and then granted Brown's motion to dismiss that counsel on November 15, 2007. Finally, the court appointed Brown's third counsel on November 17, 2007. This third attorney represented Brown until the morning of the first day of trial, at which time Brown announced he wished to proceed *pro se*. At that time, using questions drawn from the Federal Judicial Center's Bench Book, the court conducted a colloquy with Brown concerning his intent to represent himself. After determining that Brown's decision to waive his right to counsel was knowing, intelligent, and voluntary, the court granted his request for self-representation, and appointed Brown's former attorney to act as stand-by counsel.

Notably, Brown does not contend that the court failed to follow the type of colloquy recommended by *Peppers*. Rather, he argues that his waiver was not knowingly and intelligently made because the court never explained the function of stand-by counsel. This argument, however, is unavailing.

To begin, there is no Supreme Court decision requiring a *Faretta* inquiry to include a detailed explanation of standby counsel's function, and neither the Federal Judicial Center's Bench Book nor *Peppers* imposes such a requirement. Indeed, the Supreme Court has explained that a "defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure." *McKastle v. Wiggins*, 465 U.S. 168, 184 (1984). Additionally, because there is no constitutional right to have standby counsel appointed for a defendant who

5

exercises his right to proceed *pro se*,[4] it would be illogical to interpret *Faretta* and its progeny as requiring a court to provide a detailed explanation of stand-by counsel's role. *See United States v. Keiser*, 578 F.3d 897 (8th Cir. 2009); *see also United States v. Barfield*, 969 F.2d 1554, 1558 (4th Cir. 1992).

Here, the court's on-the-record colloquy with Brown demonstrates that the court satisfied *Faretta* and *Pepper* by evaluating Brown's reasons for proceeding *pro se* and his capacity to do so, by explaining the various problems and pitfalls Brown might encounter, by describing the charges and potential penalties he was facing, and by establishing that Brown understood all risks and consequences with his decision for self-representation.[5] *See Jones*, 452 F.3d at 230. Brown has simply failed to demonstrate how the court's failure to detail stand-by counsel's role and function affected Brown's ability to knowingly and voluntarily waive his right to counsel.

Accordingly, the court will deny this portion of claim one as meritless.

### 2. Failure to inform Brown he could revisit waiver of counsel

Brown also contends that his waiver of counsel was invalid because the court never informed him that he could, at any time during trial, abandon his choice to proceed *pro se*. This contention is factually incorrect. After conducting *voir dire*, and shortly before the trial began, the court stated, "should at any point, Mr. Brown, you change your mind with regard to the issue of representation, I will permit you to do that." (D.I. 337 at 107) During Brown's cross examination of Agent Stewart, the court advised Brown to reconsider his decision to proceed without an attorney. The court noted that an attorney could do a better job of cross-examining

---

[4]*See Thomas v. Carroll*, 581 F.3d 118, 125 (3d Cir. 2009).

[5]The court also notes that its colloquy satisfied the *Peppers* factors for all of the reasons comprehensively explained by the government. (D.I. 335 at 12-13)

6

witnesses, particularly with the technological challenges of coordinating the recordings and the transcripts. Brown discussed the situation with stand by counsel, but rejected the offer and continued to represent himself. And finally, during sidebar that took place when Brown was cross-examining Mark Tatman, the court repeated that stand by counsel was the best man to protect his interests; Brown, however, continued to represent himself.

In addition, while the court clearly did inform Brown he could change his mind about self-representation, there is no Supreme Court precedent requiring a court to make such a statement when conducting a colloquy with a defendant about his decision to represent himself.

Accordingly, the court will deny this portion of claim one as meritless.

### B. Ineffective Assistance Of Counsel

Brown next contends that his third and final attorney provided ineffective assistance during the pre-trial period because he: (1) failed to file a motion to suppress evidence and the statements Brown made during the police interrogation; (2) failed to investigate the circumstances surrounding the traffic stop; (3) failed to explain the law on an entrapment defense; (4) stated that Brown had no defense but to plead guilty; and (5) lacked zeal in defending Brown, which created a conflict of interest.

Brown has properly raised his ineffective assistance of counsel claims in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first *Strickland* prong, Brown must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel

rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, Brown must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced. *Strickland,* 466 U.S. at 668. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id.* 689.

However, in *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984), the United States Supreme Court articulated a very limited exception to *Strickland*'s prejudice requirement, holding that there are three situations in which prejudice caused by an attorney's performance will be presumed: where the defendant is completely denied counsel at a critical stage; where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; or where the circumstances are such that there is an extremely small likelihood that even a competent attorney could provide effective assistance, such as when the opportunity for cross-examination has been eliminated. *Cronic*, 466 U.S. at 659 & n.25.

In this proceeding, Brown contends that the court should review claim two under *Cronic* because counsel's alleged errors (failure to file a motion to suppress his police statement, refusal to use Brown's theory of entrapment defense, and failure to produce the evidence Brown wanted to produce) led to a "fundamental disagreement" which, in turn constituted a "conflict of interest." (D.I. 338) Given petitioner's presentation, the court perceives claim one to allege that petitioner's case falls within the first exception identified in *Cronic*. However, the "errors"

8

counsel allegedly committed during the pre-trial period are "plainly of the same ilk as other specific attorney errors [the Supreme Court has] held subject to *Strickland*'s performance and prejudice components." *Bell v. Cone*, 535 U.S. 685, 697-98 (2002). In other words, it is evident that Brown did not suffer the total lack of representation required to invoke the *Cronic* exception. Accordingly, the court will consider petitioner's ineffective assistance of counsel allegations under *Strickland*, not *Cronic*.

### 1. Pre-trial motion to suppress

During the trial, testimony was presented regarding a statement Brown made to law enforcement about $57,000 that was found underneath his seat during a traffic stop on April 4, 2006. In particular, Brown admitted to Detective Wright that the money in question was his, but that it was gambling profits. Brown now contends that this statement was taken in violation of the Fifth Amendment, because it was the product of a custodial interrogation without the benefit of *Miranda* warnings. Brown asserts that counsel was ineffective for failing to file a motion to suppress the statement.

Because, in this case, it is "easier to a dispose of [the instant] ineffectiveness claim on the ground of lack of sufficient prejudice," the court turns it focus to *Strickland*'s prejudice inquiry. *Strickland*, 466 U.S. at 697. Here, Brown cannot demonstrate a reasonable probability that the result of the proceeding would have been different but for counsel's failure to file a motion to suppress his statement, because other evidence was admitted at trial to show that the money underneath Brown's car seat belonged to him. First, shortly after the $57,000 was seized, a phone call between Brown and another individual was intercepted pursuant to a Title III wiretap order. In this call, Brown explained that the police took his money – what he described as "57" –

and that he would give the individual "10" if he could help him get it back. Second, Special Agent Jonathan Stewart testified about his undercover role and the four purchases of crack cocaine he made from Brown. Stewart also testified that he spoke with Brown numerous times regarding the sale of powder and crack cocaine. Third, Mark Tatman, one of Brown's co-conspirators, testified about Brown's drug operation, including how Brown would conduct transactions, where he would stash his drugs, and how he would replenish his supply. Fourth, video surveillance of Brown meeting with Special Agent Stewart on three different occasions was admitted as evidence. Fifth, in-person recorded statements of Brown making plans for drug sales, describing his production of crack cocaine, and the updating on the success of his drug business were admitted as evidence. And finally, wiretap calls of Brown distributing powder/crack cocaine to third parties who had no affiliation with law enforcement were admitted as evidence at trial.

Given the strength of this evidence, Brown cannot demonstrate a reasonable probability that the outcome of his trial would have been different if the evidence relating to the $57,000 had not been introduced. Accordingly, the court will deny this allegation for failing to satisfy the prejudice prong of the *Strickland* test.

2. Circumstances surrounding the traffic stop

Next, Brown contends that counsel rendered ineffective assistance by refusing to personally investigate the circumstances surrounding the traffic stop, and by relying on the government's version of the stop as included in its report. However, as conceded by Brown, counsel's "refusal" to investigate the circumstances surrounding the traffic stop was due to the fact that counsel read the government's report and considered "it to be a justifiable search and

10

seizure." (D.I. 338 at 30) Given Brown's failure to demonstrate otherwise, the court has no reason to question the reasonableness of counsel's reliance on the contents of the government's report. Moreover, Detective Wright's trial testimony demonstrated that he had both (1) a valid basis to stop the vehicle for speeding, as well as (2) a permissible basis to search the car, given the driver's consent. Thus, the court cannot conclude that counsel performed deficiently in this respect.

In addition, although Brown attempts to establish prejudice by linking counsel's failure to investigate the traffic stop with counsel's ultimate failure to file a motion to suppress, the attempt is unavailing. As just discussed, given the substantial other evidence of Brown's guilt, he cannot demonstrate a reasonable probability that the outcome of his trial would have been different but for counsel's failure to file a motion to suppress his statement regarding the source of the $57,000. Accordingly, the court will deny this allegation for failing to satisfy both prongs of *Strickland*.

### 3. Entrapment defense

Brown contends that counsel failed to explain the law on an entrapment defense. Brown, however, does not allege that he asked counsel to explain the best way of pursuing an entrapment defense. Moreover, Brown has not demonstrated how he would have changed the presentation of his defense at trial if so informed, nor has he demonstrated a reasonable probability that the outcome of his proceeding would have been different if he had been so informed. Thus, the court concludes that this vague statement fails to satisfy either prong of *Strickland*.

11

### 4. Advice to plead guilty

Next, Brown asserts that counsel provided ineffective assistance by encouraging him to plead guilty. However, in light of the evidence produced at trial, counsel's advice to plead guilty was certainly objectively reasonable – regardless of whether Brown had a bona fide defense. *See Cronic*, 466 U.S. at 657 n.19 ("even where there is a bona fide defense, counsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances.") In turn, the court must give great deference to counsel's decision regarding a particular trial strategy (here, to plead guilty) or the evidence to introduce, and also presume that those decisions are reasonable. *See Drummond v. United States*, 2007 WL 3378447, at *8 (D. Del. Nov. 14, 2007) (a strong presumption of reasonableness applies to the strategic decisions of counsel).

Brown also cannot demonstrate prejudice resulting from counsel's advice to plead guilty because he obviously did not heed that advice. Accordingly, the court will deny this allegation for failing to satisfy *Strickland*.

### 5. Lack of zeal

Finally, Brown contends that counsel was ineffective because of his overall "lack of zeal" during his pre-trial representation. Brown contends that counsel lacked zeal because he "flat out" refused to present an entrapment defense and to produce the evidence Brown wished. As previously discussed, these "strategic" decisions are entitled to a strong presumption of reasonableness. Brown's vague assertions do not demonstrate how counsel's conduct fell short of this presumption.

Accordingly, the court will deny claim two in its entirety for being meritless.

12

## VI. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court is denying Brown's § 2255 motion as meritless. The court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the court will not issue a certificate of appealability.

## VII. CONCLUSION

The court concludes that Brown is not entitled to relief pursuant to 28 U.S.C. § 2255. An appropriate order will issue.